## WARREN–SCHARF ASPHALT PAVING COMPANY v. CITY OF ST. PAUL.[1]

October 26, 1897.

Nos. 10,513—(57).

**Paving Contract—Construction—Unforeseen Obstacles.**
    Certain provisions in contracts for paving streets entered into between plaintiff and defendant city construed.

**Same—Pleading.**
    *Held*, that the reply in an action brought against the city to recover for materials furnished and work performed by the original contractor in repairing pavements several years after the paving was done, did not state facts sufficient to constitute a defense to the allegations found in defendant's answer.

Appeal by plaintiff from an order of the district court for Ramsey county, Willis, J., sustaining defendant's demurrer to plaintiff's reply on the ground that it failed to state a defense to the new matter alleged in the answer. Affirmed.

*Flandrau, Squires & Cutcheon,* for appellant.

*Jas. E. Markham* and *Hermon W. Phillips,* for respondent.

COLLINS, J.[2]

This appeal is from an order sustaining a general demurrer to plaintiff's reply. From the complaint and answer it appears that in 1887 defendant's board of public works invited bids or proposals

[1] Reported in 72 N. W. 711.    [2] BUCK, J., absent, took no part.

for the paving with asphalt of portions of two avenues in defendant city in accordance with certain plans and specifications. Plaintiff company being the lowest bidder, the paving upon both avenues was awarded to it, and thereupon the parties duly entered into contracts for the proper performance of the work. All the material provisions of these contracts were identical; the proposals or bids and the plans and specifications being made a part thereof. In express terms, plaintiff agreed to keep the pavement in good repair for the period of 20 years; the first half of the period, without cost or expense to the city. Among other specifications was the following:

"The street shall be graded to conform to the grade as given by the engineer, and thoroughly puddled, rammed, and rolled with a 15-ton steam road roller. The filling shall be of sand, clay, earth, or gravel, free from any animal or vegetable matter or any perishable material, and shall be put in layers not more than two feet thick, well puddled and rammed, and made so firm and compact as to be secure from settling."

And further:

If, during the first ten years, "it shall be demonstrated that the material is defective from overburning or improper mixing, or any other preventable cause, or that the workmanship had been done in an unskillful manner, the contractor shall, at his own cost and expense, upon an order of the board of public works, entirely remove the cushion coat of asphaltum, and replace the same to the satisfaction of the said board of public works."

And also:

"If, at any time within twenty years after the completion and acceptance of the work to be done under these specifications, the work shall, in the judgment of the board of public works, require to be repaired, the said board of public works shall, through its engineer or clerk, notify the contractor to make the repairs required; and, if the contractor shall neglect to make such repairs within six days from the date of the service of such notice, then the board of public works shall have the right to cause such repairs to be made in such manner as they shall deem best, and the whole cost thereof, both for labor and materials, shall be paid out from the special fund hereinafter mentioned."

And again:

"Bidders must examine and judge for themselves as to the location of the proposed work, the nature of the excavations to be made, and the work to be done.  It is understood that the whole of the work under this contract is to be done at the contractor's risk, and he is to assume the responsibility and risk of all damage to the work, or to property on the line of said work, which may be occasioned by floods, backwater, caving of the street, settling of the foundation of building, or from any other cause whatever."

The proposals or bids, the plans and specifications, and the contracts were set out verbatim et literatim, and made a part of defendant's answer, and in its reply plaintiff admitted each to be as stated.  It was then alleged, in the pleading just referred to, that, long prior to the execution of these contracts, defendant city had made excavations in the center of each of these avenues for sewer purposes; that these excavations were very deep, sewers being constructed therein; that the filling up of such excavations to the surface was imperfectly, carelessly, and negligently done by defendant, so that the earth over the sewers was liable to settle and lower the surface of the avenues; that for many years thereafter said avenues had been used as public highways; and that, when plaintiff entered into the contracts, there was no evidence or means of discovery of such imperfect, careless, and negligent filling, and plaintiff had no knowledge of it, or of the time when the sewers had been constructed.

Plaintiff's counsel assert in their brief—quite correctly—that there is involved here nothing more than a construction of the contracts; their exact position being that from the pleadings it clearly appears that the materials were furnished and the work performed under clauses in the contracts by which plaintiff contractor agreed "to do all and any work that may be specially ordered by the city council to meet unforeseen obstacles, for the following prices." And it was further specified that these agreed prices should be "for work not required by the plans or specifications, where specially ordered by the city council to meet unforeseen obstacles."

We cannot concede the correctness of counsel's position.  On the contrary, it is clear to our minds that an action has been brought to recover for materials and work furnished and performed within the first ten years in making legitimate repairs upon av-

enues improperly and defectively paved in the first instance. No other construction can be placed upon these contracts than that the plaintiff took the risk of preparing a proper foundation, and that it guarantied its work as against unknown as well as known defects which might exist in the earth upon which the paving was to be done. The avenues were to be filled with certain material, and then puddled, rammed, and rolled with a 15-ton roller, this filling to be brought to within $8\frac{1}{2}$ inches of the top of the pavement, when completed, and to be made so firm and compact as to secure it from settling. Upon the filling a bed of hydraulic cement concrete, six inches deep, was to be laid, and on the concrete the asphalt was to be placed, $2\frac{1}{2}$ inches in thickness. If within ten years it appeared that the work had been done unskillfully, the contractor was to repair without cost to the city. It was also required of bidders that they examine and judge for themselves as to the location of the work, the excavations to be made, and the work to be done.

The whole of the work was, in clear and unmistakable words, stipulated to be done at plaintiff's risk, and it expressly assumed the responsibility and risk which might be occasioned to the work by reason of any caving of the street. Had the filling and grading been done in strict compliance with the terms of the contracts, and had the foundations for the bed of concrete been made firm and compact, and secure from settling, as plaintiff agreed, the paving would have remained in place, and the repairs would have been unnecessary.

The allegations in the reply that there was no evidence of, or means of discovery of, the existence of the imperfect, careless, and negligent filling of the sewer excavations by the city when the contracts were entered into, and that plaintiff had no knowledge of the facts, do not excuse the latter from the faithful performance of these contracts. The plaintiff assumed the risks which attended its agreement to prepare the foundations for these pavements so that they would not settle, and, of course, must abide by its agreement so to do.

Finally, with reference to the contention that the pleadings show that the work came within that part of the contracts which prescrib-

ed prices for such work as might be ordered "to meet unforeseen obstacles," it should be said that evidently the obstacles here mentioned were such impediments to the performance of the contracts strictly in accordance with the plans and specifications as might arise and be discovered during the progress of the work, and make changes necessary. Surely, had the alleged defects in the sewer excavation been discovered while plaintiff was putting in the filling, no one would contend that it could then have insisted upon extra compensation for properly preparing the earth for the bed of concrete; and, if this be so, a discovery of the defect years after the paving was done would not give a right of action for materials furnished and work performed in making repairs.

Order affirmed.